IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal Case No. 16-cr-00267-LKG |
| | ) |
| AYINDE DELEON, | ) Dated:  October 23, 2024 |
| | ) |
| Defendant/Petitioner *pro se*. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER ON
THE PETITIONER'S POST-CONVICTION MOTIONS**

**I.     INTRODUCTION**

Petitioner *pro se,* Ayinde Deleon, has filed: (1) a motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 (ECF Nos. 1429, 1459); (2) a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF Nos. 1665, 1672); and (3) a motion to reduce sentence, pursuant to Amendment 821 (ECF No. 1859).  These motions are fully briefed. ECF Nos. 1429, 1459, 1586, 1624, 1665, 1672, 1700, 1859, 1899.  No hearing is necessary to resolve the motions.  *See* L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **DENIES** the Petitioner's motion to vacate, set aside, or correct sentence (ECF No. 1429); (2) **DENIES** the Petitioner's motion for compassionate release (ECF No. 1665); and (3) **DENIES** the Petitioner's motion to reduce sentence (ECF No. 1859).

**II.     BACKGROUND AND PROCEDURAL HISTORY[1]**

The Petitioner is currently serving a 180-month sentence of imprisonment, following his 2019 conviction for one count of conspiracy to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962(d) (Count I), and one count of conspiracy to distribute one kilogram or more of heroin and 280 grams or more of cocaine base, in violation of 21 U.S.C. § 846 (Count II).  ECF No. 979.

---

[1] The facts recited in this memorandum opinion and order are derived from the stipulation of facts in the Petitioner's Plea Agreement (ECF No. 908), the amended presentence investigation report (ECF No. 981) and the Government's responses in opposition to the Petitioner's post-conviction motions (ECF Nos. 1586, 1700, 1899).

As background, on June 1, 2017, the Government issued a 32-count Superseding Indictment (the "Second Superseding Indictment"), charging the Petitioner with one count of conspiracy to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962(d) (Count I), and one count of conspiracy to distribute one kilogram or more of heroin and 280 grams or more of cocaine base, in violation of 21 U.S.C. § 846 (Count II), in connection with an alleged gang-related racketeering conspiracy. ECF No. 515. On October 2, 2018, the Petitioner pled guilty to these offenses. ECF No. 908.

The Offenses

Pursuant to his Plea Agreement with the Government, the Petitioner admitted to the following facts related to these offenses. Murdaland Mafia Piru ("MMP"), also known as the "Mob" or "Mobsters," was a violent subset of the Bloods gang that operated in Maryland and elsewhere from at least prior to 2011 until the date of the Second Superseding Indictment. *Id*. at 11; *see also* ECF No. 981 at ¶ 6. For many years, MMP controlled the drug trade in large swaths of Northwest Baltimore City. ECF No. 908 at 11; ECF No. 981 at ¶ 6.

MMP's drug shop, located in the 5200 block of Windsor Mill Road, was particularly lucrative due to its close proximity to Interstate 70, and the drug shop frequently attracted drug customers driving from western Maryland and neighboring states. ECF No. 908 at 11; ECF No. 981 at ¶ 6. MMP's members and associates functioned as a continuing unit for the common purposes of enriching themselves through drug trafficking and other criminal activities and using violence and threats of violence—including murder—to intimidate or retaliate against witnesses, protect the gang's territories, enforce debts and eliminate rivals. ECF No. 908 at 11; ECF No. 981 at ¶ 6.

The Petitioner was a member of MMP during the dates of the racketeering conspiracy and he agreed with members of MMP to conduct and participate in the gang's affairs, through a pattern of racketeering activity that included offenses involving drug distribution. ECF No. 908 at 11; ECF No. 981 at ¶ 7. Specifically, the Petitioner agreed that the "Overt Acts" for which he is named in the Second Superseding Indictment represent an accurate sample of his activities in furtherance of the racketeering enterprise. ECF No. 908 at 11; ECF No. 981 at ¶ 7.

In April 2016, the Petitioner participated in a series of recorded jail calls with a co-Defendant, who was incarcerated in a Baltimore City jail on state drug charges, including a call on April 3, 2016, during which the co-Defendant advised the Petitioner to be careful because the

undercover officer involved in his case "still be coming up there videoing sh**" and "nig**s still be giving it to him." ECF No. 908 at 11; ECF No. 981 at ¶ 8. The Petitioner expressed concern that he might be targeted by the police, saying "I be out this bit** all day every day too, you know, you feel me?" ECF No. 908 at 11; ECF No. 981 at ¶ 8. During another jail call conducted on April 13, 2016, a co-Defendant told the Petitioner to call "Lil Man" and tell him he owes the co-Defendant "a PayPal," and "if he ain't got it, yo, tell his bit** ass don't come around the way no more or y'all gonna beat him up." ECF No. 908 at 11; ECF No. 981 at ¶ 9. On April 13, 2016, the Petitioner also participated in a recorded jail call with a known MMP member who was incarcerated in a Baltimore City jail on state murder charges, during which the Petitioner discussed, among other things, smuggling narcotics into the jail for the MMP member. ECF No. 908 at 11-12; ECF No. 981 at ¶ 9.

On May 9, 2016, the Petitioner attended a funeral for slain MMP member Maurice Braham with other members of the gang. ECF No. 908 at 12; ECF No. 981 at ¶ 10. The Petitioner draped a maroon banner emblazoned with the letters "MMP" over Mr. Braham's casket. ECF No. 908 at 12; ECF No. 981 at ¶ 10.

On May 17, 2016, the Petitioner discussed selling a 9mm caliber firearm—one of two he said he owned—to a confidential informant who was wearing an audio recording device. ECF No. 908 at 12; ECF No. 981 at ¶ 11. On June 1, 2016, the Petitioner told the confidential informant that he no longer wanted to sell the firearm, because he "need[ed] them" both. ECF No. 908 at 12; ECF No. 981 at ¶ 11. On September 22, 2016, at 12:39 p.m., the Petitioner participated in another recorded jail call with a known MMP member, during which he agreed to help smuggle narcotics into the jail for the MMP member. ECF No. 908 at 12; ECF No. 981 at ¶ 12.

On September 27, 2016, law enforcement officers executed a federal search warrant at the Petitioner's residence located at 32 Stockmill Road, Pikesville, Maryland. ECF No. 908 at 12; ECF No. 981 at ¶ 13. During the search, the officers recovered, among other things, the following items belonging to the Petitioner:

- approximately 116 grams of marijuana;
- $1,301.00 in U.S. currency;
- a digital scale;
- packaging material;

3

- two balaclava masks;
- five cell phones; and
- a maroon banner with the words "Mookie MIP MMP."

ECF No. 908 at 12; ECF No. 981 at ¶ 13. Law enforcement officers also recovered the following items belonging to the Petitioner from a vehicle:

- approximately 13 grams of marijuana;
- a stun gun; and
- letters from a co-Defendant instructing the Petitioner how to smuggle narcotics into the jail for the co-Defendant by sending it through the mail and disguising the envelope to look like legal mail.

ECF No. 908 at 12; ECF No. 981 at ¶ 14. In addition, pursuant to the search warrant, law enforcement officer forensically analyzed the Petitioner's cell phones. ECF No. 908 at 13; ECF No. 981 at ¶ 15. One cell phone contained numerous text messages discussing narcotics transactions. ECF No. 908 at 13; ECF No. 981 at ¶ 15.

In January 2017, a federal search warrant was executed on the Petitioner's Facebook account bearing user profile "marc.deleon.372." ECF No. 908 at 13; ECF No. 981 at ¶ 16. The Petitioner's account was found to contain numerous references to his membership in MMP. ECF No. 908 at 13; ECF No. 981 at ¶ 16.

The Plea Agreement

On August 13, 2018, the Petitioner and the Government entered into a Plea Agreement, wherein the Petitioner agreed to plead guilty to Counts I and II of the Second Superseding Indictment. ECF No. 908. In the Plea Agreement, the Petitioner agreed that he conspired with other members of MMP to distribute heroin, cocaine base and marijuana in furtherance of the gang, and that it was reasonably foreseeable to him that between one and three kilograms of heroin, and between 280 and 840 grams of cocaine base, would be distributed by members of the conspiracy. *Id*. at 1-2.

The parties also stipulated in the Plea Agreement to the following advisory Sentencing Guidelines calculation: the applicable base offense level was 30, pursuant to U.S.S.G. § 2D1.1(c)(5), because the offense involved more than 1 kilogram of heroin and 280 grams of cocaine. *Id*. at 5. The Government reserved the right to seek, and the Petitioner reserved the right to oppose, a two-level increase in the offense level, pursuant to U.S.S.G. § 2D1.1(b)(1),

because the Petitioner possessed a firearm. *Id*. The Government also reserved the right to seek, and the Petitioner reserved the right to oppose, a two-level increase in the offense level, pursuant to U.S.S.G. § 2D1.1(b)(4), because the object of the offense was the distribution of a controlled substance in a prison, correctional facility or detention facility. *Id*. at 6.

In addition, the Government agreed not to oppose a two-level reduction in the offense level, pursuant to U.S.S.G. § 3E1.1(a), based upon the Petitioner's timely acceptance of responsibility. *Id*. There was no agreement as to the Petitioner's criminal history. *Id*.

Lastly, the parties agreed that the sentence imposed in the case should be between 120 and 180 months of imprisonment, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. *Id*. at 6-7. The Petitioner waived his right to appeal his conviction or his sentence, so long as the sentence did not exceed the agreed-upon C-plea ceiling of 180 months. *Id*. at 7.

The presentence investigation report ("PSR") for this matter shows that the Petitioner's criminal history category is V, with 11 criminal history points. ECF No. 981 at 10–11. This criminal history calculation was based upon: (1) the Petitioner's 2004 conviction for handgun in vehicle in the Circuit Court of Maryland for Baltimore City (Case No. 204015005), which scored three points; (2) the Petitioner's 2005 conviction for possession with intent to distribute controlled dangerous substances in the Circuit Court of Maryland for Baltimore City (Case No. 204216032), which scored three points; (3) the Petitioner's 2007 conviction for first-degree assault and conspiracy to commit first-degree murder in the Circuit Court of Maryland for Anne Arundel County (Case No. 02K06002852), which scored three points; and (4) a two-point increase, pursuant to U.S.S.G. § 4A1.1(d), because the Petitioner was on probation for the state murder conspiracy conviction when he committed the instant offenses. *Id*.

During the sentencing hearing held on January 11, 2019, the Court grouped Count II with Count I and adopted the agreed-to base offense level of 30, pursuant to U.S.S.G. § 2D1.1(c)(5), because the offense involved more than one kilogram of heroin and 280 grams of cocaine. ECF No. 1288 at 3. The Court agreed with the Government that: (1) there was a two-level increase in the offense level, pursuant to U.S.S.G. § 2D1.1(b)(1), because the Petitioner possessed a firearm and (2) a two-level increase in the offense level, pursuant to U.S.S.G. § 2D1.1(b)(4), because the object of the offense was the distribution of a controlled substance in a prison, correctional facility, or detention facility. *Id*. at 8-9, 12-13. And so, after applying a two-level reduction in

the offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Petitioner's timely acceptance of responsibility, the resulting offense level was 32. *Id*. at 16–17.

The Court also adopted the PSR's criminal history calculation of category V, without objection from the defense and determined that the resulting Guidelines range was 188 to 235 months imprisonment. *Id.* at 18. And so, the Court accepted the parties' stipulation as to the sentence and sentenced the Petitioner to 180 months of imprisonment. *Id*. at 47. In doing so, the Court explained that this sentence was necessary to account for, among other things: (1) the "very serious" nature of the offense; (2) the Petitioner's criminal history, which included an "extremely serious conviction for a conspiracy to murder in 2006;" (3) the Petitioner's inability to "tear himself away from the drugs and the guns and the gang" when he was released from prison; and (4) the need to avoid unwarranted sentencing disparities between the Petitioner and other members of the conspiracy who were similarly situated. *See id*. at 44-49.

On February 24, 2020, the Petitioner filed a motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255. ECF No. 1429; *see also* ECF No. 1459. On November 20, 2020, the Government filed a response in opposition to the Petitioner's motion to vacate. ECF No. 1586. On February 11, 2021, the Petitioner filed a reply brief. ECF No. 1624.

On September 14, 2021, the Petitioner filed a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 1665; *see also* ECF No. 1672. On December 2, 2021, the Government filed a response in opposition to the Petitioner's motion for compassionate release. ECF No. 1700.

On May 29, 2024, the Petitioner filed a motion to reduce sentence, pursuant to Amendment 821. ECF No. 1859. On October 1, 2024, the Government filed a response in opposition to the Petitioner's motion to reduce sentence. ECF No. 1899.

The Petitioner's motions having been fully briefed, the Court resolves the pending motions.

## III.    LEGAL STANDARDS

### A.    Compassionate Release And Amendment 821

The United States Court of Appeals for the Fourth Circuit has held that a court "may not modify a term of imprisonment once it has been imposed[.]"   18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492,

495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception to this rule is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

In this regard, Title 18, United States Code, Section 3582(c)(1)(A)(i), commonly known as the "compassionate release" provision, provides a statutory vehicle to modify a defendant's sentence. *United States v. Wiggins*, 2020 WL 4436373, at *2 (D. Md. Aug 3, 2020). Section 3582 was adopted as part of the Sentencing Reform Act of 1984. *Id*. The statute originally permitted a court to alter a sentence only upon a motion by the Director of the Bureau of Prisons ("BOP"). *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). But, in December 2018, Congress significantly modified the compassionate release mechanism when it enacted the First Step Act of 2018 (the "FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018).

The Court has held that 18 U.S.C. § 3582(c)(1)(A), as amended by the FSA, permits a court to reduce a sentence of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. *Wiggins*, 2020 WL 4436373, at *2. And so, once a defendant has exhausted his or her administrative remedies, the defendant may petition this Court directly for compassionate release. *Id*.

Pursuant to Section 3582(c)(1)(A), the Court may modify a defendant's sentence if, "after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable," it finds that:

> (i) extraordinary and compelling reasons warrant such a reduction;
> or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy

7

statements issued by the Sentencing Commission . . . .

*Id*. at *3.   And so, to be entitled to relief under Section 3582(c)(1)(A)(i), the defendant must demonstrate that: (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the United States Sentencing Commission (the "Commission") in U.S.S.G. § 1B1.13.   *Id*.

In this regard, the Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t).   Relevant to the pending motion, the Commission has issued a policy statement that includes the following "extraordinary and compelling" reasons for compassionate release eligibility: (1) the medical circumstances of the defendant; (2) the advanced age of the defendant; (3) the defendant's family circumstances; (4) where the defendant was a victim of abuse while in custody; (5) any combination of the reasons set forth at (1) through (4); and (6) where the defendant received an unusually long sentence.   U.S.S.G. §§ 1B1.13(b)(1)-(6).   For a defendant's medical circumstances to qualify as an "extraordinary and compelling" reason for compassionate release, one of the following circumstances must apply:

> (A) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory).  A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end stage organ disease, and advanced dementia.
>
> (B) The defendant is—(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

> (D) The defendant presents the following circumstances—(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority; (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and (iii) such risk cannot de adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1). And so, a defendant's increased risk of suffering complications or death from exposure to disease during a public health emergency can be an extraordinary and compelling reason for compassionate release. *Id*.

The Court may also reduce a sentence after it has been imposed, where the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)." 18 U.S.C. § 3582(c)(2). But, the Court may reduce such a sentence only "after considering the factors set forth in [S]ection 3553(a), to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

The Fourth Circuit has held that the Court must employ a two-step approach in considering Section 3582(c)(2) motions. First, the Court must determine the defendant's eligibility for a sentence reduction. *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). In this regard, the Commission has instructed that the Court may not reduce a sentence "to a term that is less than the minimum of the amended guideline range," unless the defendant's original sentence resulted from a downward departure based upon substantial assistance to government authorities. *See* U.S.S.G. § 1B1.10(b)(2); *see also United States v. Dunphy*, 551 F.3d 247, 252 (4th Cir. 2009) (holding that Section 1B1.10 is "a jurisdictional bar to reducing sentences below the range authorized by the Commission").

Second, the Court may only grant the authorized sentence reduction 'after considering the factors set forth in [S]ection 3553(a) to the extent that they are applicable.'" *United States v. Peters*, 843 F.3d 572, 574 (4th Cir. 2016). And so, "[t]he ultimate decision of '[w]hether to reduce a sentence and to what extent' is committed to the district court's discretion." *Id.*

### B. Motions To Vacate Sentence And Ineffective Assistance Of Counsel

Pursuant to 28 U.S.C. § 2255(a), a prisoner in federal custody may "move the court which imposed the sentence to vacate, set aside or correct the sentence," if the prisoner can show "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . [.]" 28 U.S.C. § 2255(a). A motion made pursuant to Section 2255 is a collateral attack on a conviction or sentence imposed in a separate proceeding. *Wall v. Kholi*, 562 U.S. 545, 552 (2011). And so, to succeed on the collateral attack, the defendant must prove by a preponderance of the evidence that one of the following occurred: (1) the conviction or sentence was imposed in violation of the laws or Constitution of the United States; (2) the Court imposing the sentence lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

In this regard, the Fourth Circuit has recognized that the Court has "three possible methods, depending upon the facts, [for] disposition of motions under Section 2255:" summary disposition, disposition on an expanded record or disposition after an evidentiary hearing. *Raines v. United States*, 423 F.2d 526, 530 (4th Cir. 1970). Summary disposition of a Section 2255 motion is appropriate where "the files and records conclusively show that the prisoner is entitled to no relief." *Id.*; *accord United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (holding that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court").

Relevant to the pending motion to vacate, when evaluating a defendant's claim of ineffective assistance of counsel, the Court considers whether the conduct of the defendant's attorney fell "within the range of competence normally demanded of attorneys in criminal cases." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). And so, claims of ineffective assistance of counsel are decided by the applying the following two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant a fair trial, a trial whose result is

10

> reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.*; *see also Roach v. Martin*, 757 F.2d 1463, 1476-77 (4th Cir. 1985); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In evaluating the first prong of this test, the Court should make every effort to assess the attorney's conduct from counsel's perspective at the time. *Strickland*, 466 U.S. at 690. Because of the difficulty in assessing an attorney's performance, the Supreme Court has recognized that there is a strong presumption that defense counsel's conduct was competent. *Id*. And so, the defendant bears the burden of overcoming the presumption that an attorney's actions were based on "sound trial strategy" and proving that defense counsel's assistance did not reach an "objective standard of reasonableness." *Id.* at 688-89.

The second prong of the test requires the defendant to show that the attorney's conduct actually prejudiced the defense. *Id*. To satisfy this prong, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. And so, if the defendant is unable to make both of these showings, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process" that led to an unreliable verdict. *Id*

## IV.   ANALYSIS

The Petitioner has filed three motions related to his sentence that are pending before the Court.

First, the Petitioner has moved to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255, upon the grounds of ineffective assistance of counsel. ECF Nos. 1429, 1459. Second, the Petitioner has filed a motion for compassionate release, pursuant to 18 U.S.C. § 3582( c)(1)(A), upon the grounds that his health conditions put him at risk of serious adverse health complications following a Covid-19 infection. ECF Nos. 1665, 1672. Lastly, the Petitioner has moved to reduce his sentence, upon the grounds that he should receive a "two-point reduction," pursuant to Amendment 821. ECF No. 1859. And so, the Petitioner requests that the Court either vacate or reduce his sentence. ECF Nos. 1429, 1458, 1665, 1672, 1859.

The Government opposes the Petitioner's motions upon the grounds that: (1) the Court should deny the Petitioner's motion to vacate, because the motion is untimely and the Petitioner has not shown ineffective assistance of counsel; (2) the Court should deny the Petitioner's

11

motion for compassionate release, because he has not shown extraordinary and compelling reasons to warrant compassionate release and the Section 3553(a) factors do not support compassionate release; and (3) the Court should deny the Petitioner's motion to reduce sentence, because he is not eligible for a sentence reduction and the Section 3553(a) factors do not support a sentence reduction. ECF Nos. 1586, 1700, 1899. And so, the Government requests that the Court decline to vacate or reduce the Petitioner's sentence. ECF Nos. 1586, 1700, 1899.

For the reasons that follow, a careful review of the evidence and litigation history for this case shows that the Petitioner has not shown ineffective assistance of counsel with regards to his former defense counsel. The Petitioner has also not shown an extraordinary and compelling reason to warrant compassionate release, based upon his health conditions and the Covid-19 pandemic. Lastly, the Petitioner has not shown that he is eligible for a sentence reduction under Amendment 821. And so, the Court: (1) DENIES the Petitioner's motion to vacate, set aside, or correct sentence (ECF No. 1429); (2) DENIES the Petitioner's motion for compassionate release (ECF No. 1665) and (3) DENIES the Petitioner's motion to reduce sentence (ECF No. 1859).

### A.  The Petitioner Has Not Shown An Extraordinary And Compelling Reason For Compassionate Release

As an initial matter, the Petitioner has not demonstrated an extraordinary and compelling reason to warrant compassionate release due to his alleged health conditions. The Commission has issued a policy statement which provides, among other things, that a defendant's medical circumstances and advanced age can constitute "extraordinary and compelling" reasons for compassionate release eligibility. U.S.S.G. §§ 1B1.13(b)(1)-(2). Relevant here, this policy statement provides that, for a defendant's medical circumstances to qualify as an "extraordinary and compelling" reason for compassionate release, one of the following must apply:

> (A) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end stage organ disease, and advanced dementia.
>
> (B) The defendant is—(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or

12

>cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
>(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>
>(D) The defendant presents the following circumstances—(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority; (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and (iii) such risk cannot de adequately mitigated in a timely manner.

U.S.S.G. §§ 1B1.13(b)(1).

In this case, the Petitioner alleges that his obesity, asthma, hypertension, pre-diabetic condition and depression place him a greater risk of severe illness due to Covid-19. ECF No. 1665 at 1. But, the extraordinary relief of compassionate release, based upon the Petitioner's health conditions, is only appropriate when he: (1) is suffering from an advanced terminal illnesses; (2) has a health condition that cannot be managed or remediated while he is incarcerated and that impacts his ability to provide self-care; (3) has a medical condition that requires long-term or specialized care that is not being provided by the BOP; or (4) has an emergency medical condition arising from large-scale infectious disease outbreaks like the Covid-19 pandemic. *See* U.S.S.G. § 1B1.13(b)(1).

Such circumstances are not present here. Rather, as the Government correctly observes, the Petitioner's medical records do not appear to show that he suffers from obesity, pre-diabetes or depression. ECF No. 1700-1; *see also* ECF No. 1700 at 7.

More importantly, the Petitioner's concern that his health conditions place him at increased risk of adverse health consequences due to Covid-19 is not an extraordinary and compelling reason to warrant compassionate release. As this Court has previously recognized,

13

the Covid-19 pandemic has had a "material" impact on public health. *United States v. Williams*, 2020 WL 1434130, at *2 (D. Md. Mar. 24, 2020). But, on May 11, 2023, the President and the Centers for Disease Control and Prevention issued a proclamation declaring that Covid-19 is no longer a national pandemic due to advancements in developing a vaccine, which has led to lower contraction and infection rates. *See* https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html. Given this, the Petitioner is at no greater risk from Covid-19 than other inmates and members of the general public who have similar underlying health conditions. And so, the Petitioner has not shown extraordinary and compelling reasons to warrant compassionate release.

      **B.**     **The Petitioner Has Not Shown Ineffective Assistance Of Counsel**

Turning to the Petitioner's motion to vacate, the litigation history and evidence in this case also make clear that the Petitioner has not shown ineffective assistance of counsel with regards to his former defense counsel.[2] To obtain relief on a theory of ineffective assistance of counsel, the Petitioner must show: (1) that he received ineffective assistance of counsel and (2) that he was prejudiced by that ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). To satisfy the first prong of this test, the Petitioner must prove that his attorney's conduct "fell below an objective standard of reasonableness." *Id*. And so, the Petitioner must show that his counsel's performance was not "within the extremely wide range of professionally competent assistance." *Baker v. Corcoran*, 220 F.3d 276 (4th Cir. 2000); *see also Strickland*, 466 U.S. at 687-88.

With respect to the second prong of this test, the Petitioner must also demonstrate that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Fugit*, 703 F.3d 248, 259 (4th Cir. 2012) (quoting *Strickland*, 466 U.S. at 687-88). And so, the Petitioner has the burden of demonstrating his entitlement to relief under a theory that his lawyer was ineffective. *See United States v. Roane*, 378 F.3d 382, 404-05 (4th Cir. 2004).

The Petitioner has not met his burden here. The Petitioner first argues that his former defense counsel's performance was constitutionally deficient, because his attorney failed to seek

---

[2] While the Court addresses the merits of the Petitioner's motion, the Government argues with some persuasion that the Petitioner's motion to vacate is untimely, because the Petitioner filed his motion to vacate on February 24, 2020, which was more than one year after the deadline for noting an appeal and the date on which the judgment entered in this case became final. *See* 28 U.S.C. § 2255(f)(1).

14

to exclude a prior Maryland state convictions for handgun and drug violations that he maintains had been expunged. ECF No. 1459 at 13. Specifically, the Petitioner argues that his criminal history calculation would have been category III, if his former defense counsel had sought to exclude these prior convictions during his sentencing hearing, resulting in a lower Guidelines range. *Id*. at 13-14. And so, the Petitioner contends that he would have received a lower sentence, but for this alleged error by his former defense counsel. *Id*. at 14; *see also* U.S.S.G. § 4A1.2(j).

The Petitioner's claim of ineffective assistance of counsel is not substantiated by the evidence before the Court. The Petitioner has provided the Court with two documents that he represents to be an "Order for Expungement of Records" for his state handgun conviction, dated August 8, 2017, and a "Certificate of Compliance," signed by Expungement Clerk for the Circuit Court of Maryland for Baltimore City. *See* ECF No. 1459-4. But the certified copy of the court records for the Petitioner's handgun case shows that the Petitioner's request to expunge his handgun violation conviction was denied in 2020.[3] ECF No. 1586-2 at 4-5; *see also* ECF No. 1586 at 15. There is also no evidence before the Court to show that the Petitioner took steps to expunge his Maryland state drug conviction. *See generally* ECF No. 1586. Given this, the Petitioner has not established that these convictions have been expunged, or that his former defense counsel erred by failing to seek to exclude these convictions.

The evidence before the Court also shows that the Court correctly calculated the Petitioner's criminal history score. During the sentencing hearing, the Court adopted the amended PSR's criminal history calculation of category V, without objection from the defense, and the Court determined that the resulting Guidelines range in this case was 188 to 235 months imprisonment. ECF No. 1288 at 18. This criminal history category was properly calculated, based upon, among other things, the Petitioner's prior Maryland state handgun and drug convictions, because the evidence before the Court indicates that these two convictions had not been expunged. Given this, the Petitioner has also not shown that he would have received a lower sentence, but for the alleged error by his former defense counsel.

---

[3] The Government also argues that the Petitioner's state handgun conviction is not eligible for expungement under Maryland law. ECF No. 1586 at 14; *see also* Md. Code, Crim. Pro. Art. § 10-105(e)(4)(i); ECF No. 1459-5 (State's Response to Petition for Expungement).

The Petitioner's claim that his former defense counsel was ineffective, because he declined to file an appeal in this matter, is also unsubstantiated. ECF No. 1459 at 16-19. The Petitioner states that he met with his former defense counsel, James Crawford, Esq., after the January 11, 2019, sentencing hearing and that he asked Mr. Crawford whether he could file an appeal, "so [he] could raise his (expunged) convictions." *Id*. at 18; *see also* ECF No. 1459-3. But, the Government has provided an affidavit attributed to Mr. Crawford, in which he states that the Petitioner never directed him to file an appeal.[4] *See* ECF No. 1586-4.

Mr. Crawford also acknowledges in the affidavit that he visited the Petitioner in lockup after the sentencing hearing for approximately 45 minutes and that he spoke with the Petitioner about the case. *Id*. But Mr. Crawford states that the Petitioner did not request an appeal during this conversation. *Id*. Mr. Crawford also states that had the Petitioner done so, he would have filed an appeal within the prescribed time period. *Id*. And so, there is conflicting evidence before the Court regarding whether the Petitioner asked Mr. Crawford to appeal his sentence upon any ground, including the allegedly expunged state convictions.

What is clear, however, is that the Petitioner raises his ineffective assistance of counsel claim for the first time in his motion to vacate, which was filed more than a year after the alleged conversation with his former defense counsel occurred. Given this, the weight of the evidence does not substantiate the Petitioner's claim that his former defense counsel ignored his instructions to file an appeal. *See Pittman v. United States*, 2019 WL 2892928, at *5 (E.D.N.C. May 29, 2019) (finding that defendant had failed to carry burden of demonstrating by preponderance of evidence that counsel ignored instruction to notice appeal); *see also Ford v. United States*, 2013 WL 3155447, at *2 (D. Md. June 19, 2013). And so, again, the Petitioner has not met his burden to show that his former defense counsel's performance was constitutionally deficient.

---

[4] The Government attaches the apparent affidavit of Mr. Crawford as an exhibit to its response in opposition to the Petitioner's motion to vacate. *See* ECF No. 1586-4. But the document is unsigned and undated. Given the contradictory evidence before the Court and the passage of several years since the Petitioner filed his motion to vacate and his alleged conversation with Mr. Crawford, it is not possible for the Court to conclusively determine whether the Petitioner requested that his former defense counsel file an appeal. Nonetheless, the burden is on the Petitioner to show ineffective assistance of counsel and he has failed to do so in this case.

For these reasons, the Petitioner has neither shown that he received ineffective assistance of counsel, nor that he was prejudiced by that ineffective assistance of counsel. *See Strickland*, 466 U.S. at 688. And so, the Court DENIES his motion to vacate, set aside, or correct sentence.

### C. The Petitioner Has Not Shown That He Is Eligible For A Sentence Reduction

As a final matter, the Petitioner has also not shown that he is eligible for a reduced sentence pursuant to Amendment 821. The Court may only modify a term of imprisonment if the sentencing range that was used to establish the Petitioner's sentence has subsequently been lowered by the Commission. 18 U.S.C. § 3582(c)(2); *see also* U.S.S.G. § 1B1.10(a)(2)(B) (providing that a defendant is not eligible for a sentence reduction if the retroactively applicable amendment "does not have the effect of lowering the defendant's applicable guidelines range"). Any such modification must also be consistent with the applicable policy statements issued by the Commission, including the policy that the Court may not reduce a sentence "to a term that is less than the minimum of the amended guideline range," unless the Petitioner's original sentence resulted from a downward departure based upon substantial assistance to the Government. U.S.S.G. § 1B1.10(b)(2); *United States v. Dunphy*, 551 F.3d 247, 252 (4th Cir. 2009) (holding that § 1B1.10 is "a jurisdictional bar to reducing sentences below the range authorized by the Commission").

In this case, the sentencing range that the Court used to determine the Petitioner's sentence has not been subsequently lowered by the Commission. Notably, Part A to Amendment 821 to the Sentencing Guidelines amended U.S.S.G. § 4A1.1(d) to strike the two "status points" previously assessed for defendants who committed their offense while under any criminal-justice sentence. U.S.S.G. Amend. 821, Pt. A. And so, the new provision, U.S.S.G. § 4A1.1(e), assesses a single "status point" for defendants who have seven or more criminal history points. U.S.S.G. § 4A1.1(e).

In this case, the PSR makes clear that the Petitioner received nine natural criminal history points and two "status points" under the previous version of Section 4A1.1(d), for a total criminal history score of 11. ECF No. 981 at 11. While the Petitioner would receive just one "status point" today, under the current version of Section 4A1.1(e), this single status point would yield a total criminal history score of 10 and result in the same criminal history category, category V, that the Petitioner received during the sentencing hearing. U.S.S.G Ch. 5, Pt. A.

Given this, the sentencing range for this case has not been subsequently lowered by the Commission.

A reduction of the Petitioner's sentence would also be inconsistent with the applicable policy statements of the Commission. The 180-month sentence of imprisonment that the Court imposed in this case is eight months below the bottom of the then-applicable Guidelines range of 188 to 235 months imprisonment, which still applies today. Given this, the Commission's policy that the Court may not reduce a sentence to a term that is less than the minimum of the amended guideline range, unless the Petitioner's original sentence resulted from a downward departure based upon substantial assistance to the Government, also precludes the Court from further reducing the Petitioner's sentence here. *See* U.S.S.G. § 1B1.10(b)(2)(A); *see also United States v. Spruhan*, 989 F.3d 266, 268-69 (4th Cir. 2021) (affirming the denial of a sentence reduction under Section 3582(c)(2) because the defendant's sentence as stipulated in a Rule 11(c)(1)(C) plea agreement was already below the minimum of the amended guideline range).

For these reasons, the Court also DENIES the Petitioner's motion to reduce sentence.

### V.      CONCLUSION

For the foregoing reasons, the Court:

(1) **DENIES** the Petitioner's motion to vacate, set aside, or correct sentence (ECF No. 1429);

(2) **DENIES** the Petitioner's motion for compassionate release (ECF No. 1665); and

(3) **DENIES** the Petitioner's motion to reduce sentence (ECF No. 1859).

IT IS SO ORDERED.

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge